IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Freeman Equipment, Inc., )
)
        Plaintiff, )
)
v. ) No. 16 C 9172
)
Caterpillar, Inc., )
)
        Defendant. )
)
)

MEMORANDUM OPINION AND ORDER

In this patent infringement suit, plaintiff alleges that defendant Caterpillar manufactures and sells heavy duty tractor crawlers incorporating "final drive guard assemblies" that infringe three of plaintiff's patents. Before me is defendant's motion to disqualify plaintiff's counsel, which I deny for the following reasons.

I.

Defendant asserts two bases for disqualification: first, that plaintiff's counsel, Michael Padden, spoke by telephone to William Perry, a retired Caterpillar employee, about "Caterpillar's internal legal practices pertaining to patent procurements," without disclosing to Mr. Perry that he represented an entity suing Caterpillar for patent infringement; and second, that Mr. Padden previously represented Caterpillar

in a patent infringement litigation. Defendant seeks to disqualify both Mr. Padden and his law firm from representing plaintiff in this action.

Defendant's chief complaint is that Mr. Padden called Mr. Perry on February 2, 2017, and, without identifying himself or his client, asked Mr. Perry whether he recalled a conversation he had had with Ernie Freeman (the owner of Freeman Equipment) at a tradeshow in 2008. Perry Decl., Exh. 1 to Def.'s Mot. at ¶ 4. Mr. Perry responded that he did not. *Id*. Mr. Padden also asked: 1) whether Caterpillar had any internal process for evaluating and drafting patent applications, and if so, what that process was; and 2) about Caterpillar's inventor disclosure form, and the incentives Caterpillar uses to encourage employees to disclose patentable inventions. *Id*. at ¶¶ 5-6. Finally, Mr. Padden allegedly asked "if anyone at Caterpillar would ever attempt to falsely represent an idea as their own in order to obtain a patent or other reward." *Id*. at ¶ 6. The Perry Declaration does not disclose how Mr. Perry responded to these questions. It states that the conversation lasted twenty to thirty minutes. *Id*. at ¶ 7.

Plaintiff disputes that Mr. Padden failed to identify himself during the call with Mr. Perry. Plaintiff points to Mr. Padden's declaration, which states that at the outset of the call, he introduced himself by name and explained that he was an

2

attorney representing plaintiff in a patent case against Caterpillar involving final drive guards. Padden Decl., Exh. 3 to Pl.'s Resp., at ¶ 6. Mr. Padden further states that he asked Mr. Perry if he would be willing to answer some questions about Mr. Freeman's guards, and that Mr. Perry agreed. *Id*. at ¶ 7. The Padden Declaration goes on to describe the nature of Mr. Padden's questions and of Mr. Perry's answers. *Id*. at ¶¶ 8-9. Mr. Padden acknowledges asking Mr. Perry "about the general procedures for evaluating and patenting new inventions at Caterpillar," and states that he told Mr. Perry he "only wanted a general outline of the process, not any specific details or confidential information." *Id*. at ¶ 10. Mr. Padden states affirmatively that Mr. Perry did not "talk about any legal advice he had seen or received at Caterpillar, or about any specific internal matter." *Id*. at ¶ 11.

Secondarily, defendant argues that disqualification is required based on Mr. Padden's previous representation of Caterpillar "in a number of litigations, including a patent infringement litigation." Def.'s Mem. at 12. In support of this argument, defendant attaches Mr. Padden's notice of appearance in a case captioned *Global Patent Holdings LLC v. Green Bay Packers, Inc*., et al., No. 00 C 4623 (N.D. Ill. 2000), which identifies Mr. Padden as local counsel for Caterpillar. *See* Yashar Decl., Exh. 10. Defendant also refers to another,

3

unidentified patent infringement suit in which Mr. Padden "was involved...for Caterpillar," Def.'s Mem. at 13, but offers no evidence of that litigation or of Mr. Padden's role in it.

Mr. Padden, for his part, confirms that he acted as local counsel for Caterpillar in *Global Patent Holdings*, a case he recalls as involving "a patent on some type of website functionality against a wide variety of businesses." Padden Decl. at ¶ 2. Mr. Padden attaches to his Declaration a copy of the docket in *Global Patent Holdings*, which reflects that the only substantive pleading filed on Caterpillar's behalf was an answer and counterclaim, which was filed by Caterpillar's lead counsel. Padden Decl., Exh. A at DN 98. Mr. Padden states that the case was stayed pending reexamination of the asserted patent, and was later dismissed without prejudice by agreement of all parties in view of the ongoing reexamination proceedings. Padden Decl. at ¶ 4. Mr. Padden does not recall having been involved in any substantive analysis of the complaint or of Caterpillar's counterclaims, or having access to Caterpillar's confidential information. *Id*. at ¶ 5.

## II.

Motions for disqualification are evaluated using a two-step analysis. First, I consider whether an ethical violation has occurred. Second, if I find that there has been a violation, I determine whether disqualification is the appropriate remedy.

4

*Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). The Seventh Circuit has cautioned that disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). The court emphasized that because disqualification deprives a party of representation of its choosing, motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Id*. at 722. Accordingly, the movant "bears a heavy burden of proving facts required for disqualification." *Guillen*, 956 F. Supp. at 1421.

Defendant argues that Mr. Padden's phone call to Mr. Perry violated Rules 4.3 and 4.4 of the Illinois Rules of Professional Conduct. Rule 4.3 provides:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

*In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1116, 1123 (N.D. Ill. 1995). On its face, the Perry Declaration does not suggest that Mr. Padden either stated or implied that he was "disinterested" in this litigation. Rather, Mr. Perry states that Mr. Padden did not mention the litigation at all. In defendant's view, that omission was an

5

ethical breach because Mr. Padden had an affirmative duty to inform Mr. Perry of the litigation, his role in it, and the fact that his client is adverse to Mr. Perry's former employer. Def.'s Mem. at 3 (citing *Brown v. St. Joseph Cty.*, 148 F.R.D. 246, 254 (N.D. Ind. 1993). But even if I assume that Mr. Perry indeed failed to provide that information, it is clear that defendant suffered no harm as a result.

Indeed, the record does not suggest that Mr. Padden sought, or obtained, any privileged information from Mr. Perry. To the contrary, the evidence reveals that defendant has publicly disclosed its practices relating to the very topics it now faults Mr. Padden for discussing with Mr. Perry: Caterpillar's patent evaluation and application process and its inventor incentive program. *See* Pl.'s Resp., Exh. 1 (Simon Crompton, *How Caterpillar Protects Its IP,* Managing Intellectual Property, (July 16, 2014) (describing the "patent review process" that takes place "for all new ideas" as part of Caterpillar's New Product Introduction process)); Exh. 2, Jacqueline Bell, *Invention Incentive Programs Get Results: Survey*, Law360 (Jan. 28, 2009) (identifying Caterpillar as among 220 companies that participated in a survey about "how they structured their incentive programs, whether there were significant financial awards available to inventors, and what types of nonfinancial recognition the company provided")).

Still, defendant insists that Mr. Padden's conversation with Mr. Perry "related to privileged topics." Reply, at 1. But "topics" are not privileged; *communications* are, and only when all of the requisite conditions are met. *See Sandra T.E. v. S. Berwyn Sch. Dist.* 100, 600 F.3d 612, 618 (7th Cir. 2010) ("The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice."); *U.S. v. Lawless*, 709 F.3d 485, 487 (7th Cir. 1983) ("The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable.").[1] Defendant does not claim that Mr. Padden asked Mr. Perry about his communications with Caterpillar's attorneys, however, or about documents that would reflect those communications. *Cf. McCook Metals*, 192 F.R.D. at 253 (concluding that while "completed forms" filled out during

---

[1] Defendant quibbles with plaintiff's citation to Seventh Circuit cases in support of its argument that Mr. Padden did not seek privileged information in his phone call with Mr. Perry, asserting that Federal Circuit law controls the question. Reply, at 4, n.2, citing *McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000). It is not clear that defendant is correct on this point (indeed, the *McCook* court applied Seventh Circuit law to decide whether the attorney-client privilege applied to the documents at issue in that case), but I need not linger on the question because defendant does not suggest that the analysis or outcome would be different under Federal Circuit law.

patent prosecution are privileged, "uncompleted forms" are discoverable).

In defendant's view, regardless of how Mr. Padden framed his questions, he was necessarily hoping to elicit privileged information from Mr. Perry, since defense counsel had previously told Mr. Padden that Caterpillar produced the discoverable material responsive to his requests, and that it was asserting the attorney-client privilege over "internal patent applications and documents created in relation to those applications." Yashar Decl., Exh. 4 at 3. But again, defendant does not claim that Mr. Padden asked about "internal patent applications and documents." Instead, he asked about Caterpillar's "internal process for evaluating and drafting patent applications." None of the authorities defendant cites supports its assertion of a blanket privilege covering all information within that topic,[2] and it

---

[2] *See, e.g., Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2016 WL 307310, at *3 (N.D. Ill. Jan. 26, 2016) (Kim, MJ.) (declining to compel drafts of inventor's declaration on which she "worked closely" with her attorney); *Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 901 (N.D. Ill. 2013) (declining to compel communications between attorney and client about technical information relevant to patentability); *E.E.O.C. v. University of Chicago Med Ctr.*, No. 11 C 6379, 2012 WL 1329171, at *4 (N.D. Ill. Apr. 16, 2012) (noting that while "Rule 4.2 does not prevent a plaintiff's lawyer from contacting former employees without the consent of the organization's lawyer," former employees may not discuss privileged information); *Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08 C 50078, 2010 WL 257253, at *4 (N.D. Ill. Jan. 22, 2010) (declining to compel answers to requests for admission seeking to learn whether inventor disclosed specific putative prior art to its counsel);

offers no evidence that Mr. Padden's questions either sought or elicited any specific, privileged information.

Moreover, the conduct defendant attributes to Mr. Padden cannot meaningfully be compared to that of the attorney sanctioned in *In re Air Crash Disaster Near Roselawn*. In that case, the plaintiffs' counsel commissioned a questionnaire to be sent to the defendant's employees seeking information relevant to the plaintiffs' claims. The court examined the questionnaire and the accompanying cover letter and determined that the letter not only failed to disclose that the questionnaire "was prepared at the request of an attorney on behalf of plaintiffs who have sued the Airline Defendants," but that it went "to great lengths to persuade the recipient of its neutral and unbiased character." 909 F. Supp. at 1123. For example, the letter described the questionnaire as an "independent survey," and suggested that it was endorsed by the FAA, among other misleading elements. *Id*. Even so, the court did not disqualify

---

*McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000) (declining to compel production of "drafts of the specifications, claims, and other parts of the patent application prepared by the attorney"); *Thorn v. Sunstrand Corp.*, No. 95 C 50099, 1997 WL 627607, at *3 (N.D. Ill. Oct. 10, 1997) (Reinhard, J.) (ex parte communication with defendant's former employee did not entail breach of attorney-client privilege); *Breedlove v. Tele-Trip Co., Inc.,* No. 91 C 5702, 1992 WL 202147, at *2 (N.D. Ill. Aug. 14, 1992) (Leinenweber, J.) ("no ruling or order is necessary" to prevent plaintiff's counsel from exploring privileged communications or matters with witnesses).

9

plaintiffs' counsel, or even impose the full range of lesser sanctions the defendants sought. *Id*. at 1124-25. For these reasons, *In re Air Crash Disaster Near Roselawn* offers scant support for disqualification on the facts here. Indeed, defendant does not claim that Mr. Padden made any affirmative misrepresentations. While Mr. Perry states that he "did not know that the caller was an attorney representing a party adverse to Caterpillar," he does not suggest that Mr. Padden said or implied that he was anyone other than who he was.[3]

Finally, whatever the merit of defendant's argument that "general patent procedures" are not relevant to the claims or defenses in this action, Reply, at 4, the fact that Mr. Padden may have discussed irrelevant topics with Mr. Perry certainly does not compel his disqualification. Indeed, defendant's

---

[3] In this connection, while I need not and do not pass upon the credibility of either declarant, I feel compelled to note that defendant's account of the phone call is perplexing. Mr. Perry states that he worked for nearly thirty years in Caterpillar's Intellectual Property Department and Legal Services Unit, including as a patent agent. Perry Decl. at ¶ 2. Defendant adds that Mr. Perry "routinely worked with counsel during his tenure and was familiar with the concept of privileged information." Reply, at 3. In view of this background, defendant's suggestion that Mr. Perry spent twenty to thirty minutes discussing Caterpillar's intellectual property with a caller who--so far as defendant's evidence reveals--neither identified himself nor stated the reason for his call, does strain credulity. At a minimum, it suggests that the conversation was, indeed, about general, non-privileged matters, as it is difficult to imagine that someone with Mr. Perry's background could be duped into giving up sensitive information about Caterpillar's intellectual property to a stranger.

argument that Mr. Padden's questions violated Rule 4.4, which prohibits lawyers from using "means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person," is unpersuasive and is not supported by authority.

I now turn briefly to defendant's argument that Mr. Padden and his law firm must be disqualified based on Mr. Padden's past representation of Caterpillar. This argument merits little discussion. First, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Weeks v. Samsung Heavy Indus. Co.*, 909 F. Supp. 582, 584 (N.D. Ill. 1996) (quoting *Kafka v. Truck Insurance Exchange*, 19 F.3d 383, 386 (7th Cir. 1994)). All agree that defendant has been aware of Mr. Padden's involvement in this case since August of 2016, and that defense counsel has actively engaged with him as opposing counsel since that time. Defendant's explanation for its almost six-month delay in seeking disqualification—that Mr. Padden's conflict of interest became apparent only after he manifested a "desire to delve into internal Caterpillar legal procedures"—is unsupported by reasoned analysis and does not withstand scrutiny.

Second, notwithstanding defendant's lengthy *apologia* for the "appearance of impropriety" standard, all agree that the

11

analysis ultimately turns on whether defendant has shown that Mr. Padden's previous representation of Caterpillar is "substantially related" to his current representation of Freeman. *See LaSalle Nat. Bank v. Lake County*, 703 F.2d 252, 255 (7th Cir. 1983). The first step in this "three-level inquiry" requires me to "make a factual reconstruction of the scope of the prior legal representation." *Id*. at 256. Then, I must determine whether it is "reasonable to infer that the confidential information allegedly given would have been given to an attorney representing a client in such matters." *Bobkoski v. Bd. of Educ. of Cary Cmty. Consol. Sch. Dist. No. 26, McHenry Cty., Ill.*, No. 90 C 5737, 1991 WL 61052, at *3 (N.D. Ill. Apr. 12, 1991). Finally, I must decide whether that issue is relevant to the issues presented in the current litigation." *Id*.

Here, I need not proceed past the first step. The only evidence defendant offers regarding the scope of Mr. Padden's previous representation of Caterpillar is his notice of appearance in *Global Patent Holdings*. Neither that document, nor defendant's vague reference in its memorandum to another, unspecified patent case in which Mr. Padden was allegedly "involved...for Caterpillar" in 2007, allows me to make a meaningful "factual reconstruction" of the scope of Mr. Padden's prior representation. Indeed, the only glimpse defendant offers into these previous cases is its acknowledgement that

12

Caterpillar "was not directly adverse to Freeman" in the latter case. Def.'s Mem. at 13. Defendant goes on to speculate that the information shared with Mr. Padden in that case "could have included information pertaining to Caterpillar's internal legal processes concerning patent procurement, patent infringement analyses, methods for obtaining legal opinions regarding infringement and/or invalidity, as well as a host of other items pertaining to Caterpillar's legal strategies involving its approach to patent infringement suits." Def.'s Mem. at 13. But the fact-based, "substantially related" inquiry requires more than mere speculation about information that might have been shared in an unidentified case not involving plaintiff.

III.

For the foregoing reasons, defendant's motion to disqualify is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 13, 2017